# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

JASON S. ANDERSEN,                    )          Case No. 3:15-CV-00664-PA
                                      )
                Plaintiff,            )          **OPINION AND ORDER**
                                      )
        v.                            )
                                      )
CAROLYN L. COLVIN,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____)

PANNER, Senior District Judge.

Plaintiff Jason Andersen ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision is not supported by substantial evidence and is therefore REVERSED.

## BACKGROUND

Born in January, 1973, plaintiff was 38 years old on his alleged onset date of May 25, 2011. Tr. 143, 198. Plaintiff filed an application for SSI on June 15, 2011, alleging disability due to multiple sclerosis. Tr. 16, 191. After plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge (ALJ). Tr. 114. Following an administrative hearing, the Commissioner issued a decision finding plaintiff not disabled on September 25, 2013. Tr. 24. The Appeals Council denied plaintiff's subsequent request for review on February 23, 2015, and the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 416.1481, 422.210 (2014). This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her

Page 2 – FINDINGS AND RECOMMENDATION

impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ
determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R. §
        416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant
        work, the analysis proceeds to step five.
5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant
        cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953. The
Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir.
1999); *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy").
If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §
416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform
other work existing in significant numbers in the national economy, the claimant is not disabled.
*Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

        The ALJ performed the sequential analysis. At step one, the ALJ found plaintiff had not
performed substantial gainful activity since the application date of June 15, 2011. Tr. 18. At
step two, the ALJ found that plaintiff has the severe impairment of multiple sclerosis (MS). *Id.*
At step three, the ALJ found plaintiff did not have an impairment or combination of impairments
that met or equaled a listed impairment. Tr. 20.

Page 3 – FINDINGS AND RECOMMENDATION

In assessing plaintiff's RFC, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work with the following limitations: he can frequently lift or carry 10 pounds; he can sit for two-hour intervals for eight hours a day; he can stand or walk for 15-minute intervals for a total of one to two hours a day; he can never balance or climb ladders, ropes, or scaffolds; he cannot work at heights; he can occasionally use stairs or ramps, stoop, kneel, crouch, and crawl; he can perform frequent fingering provided that any writing is limited to occasional; he cannot perform tasks involving more than occasional exposure to extreme heat or cold or to pulmonary irritants. Tr. 20.

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work. Tr. 23. At step five, the ALJ found that plaintiff had the RFC to perform work that exists in the national economy, including semiconductor assembler, document clerk, and credit card clerk. Tr. 24. Accordingly, the ALJ found plaintiff not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

Page 4 – FINDINGS AND RECOMMENDATION

interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinions of Teresa Everson, M.D., and Joshua Russell, M.D.; (2) failing to find his mental impairments "severe" at step two of the sequential analysis; and (3) rejecting his subjective symptom testimony.

## I.    Drs. Everson and Russell

Plaintiff first argues that the ALJ improperly rejected the medical opinions of Teresa Everson, M.D., and Joshua Russell, M.D. In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is given more weight than the opinion of a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 632; 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Page 5 – FINDINGS AND RECOMMENDATION

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

## A. Dr. Everson

Dr. Everson examined plaintiff in 2013 and completed a questionnaire prepared by plaintiff's attorney. Tr. 375-78. She indicated plaintiff has MS, asthma, sciatica, and depressive disorder, and opined that he can lift less than 10 pounds occasionally; stand or walk for two hours in an eight-hour workday; and sit for seven hours in an eight-hour workday. Tr. 375, 377. Dr. Everson also opined plaintiff can reach occasionally and feel frequently but could never handle or finger due to tremors; and that his symptoms would likely interfere with his ability to sustain basic attention and concentration. Tr. 377-78. She estimated that plaintiff's attention and concentration would be impaired for 10 percent of a standard workweek, and he would likely miss two full workdays or more each month due to his impairments, symptoms, and medication side effects. Tr. 378.

The ALJ assigned little weight to Dr. Everson's opinion. Tr. 22-23. Because Dr. Everson's was contradicted by other medical evidence in the record showing unremarkable physical examinations and assessing more mild limitations (Tr. 23), the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Everson's controverted opinion. *Lester*, 81 F3d at 830. The ALJ provided several such reasons.

First, the ALJ noted that Dr. Everson's opinion was inconsistent with the record as a whole, including plaintiff's longitudinal treatment history, his performance on physical examinations, and his independent daily activities. Tr. 23. The ALJ may reject a treating

Page 6 – FINDINGS AND RECOMMENDATION

physician's controverted opinion that conflicts with treatment notes showing, for example, improved functioning. *Valentine v. Comm'r*, 574 F.3d 685, 692-93 (9th Cir. 2009). Here, in contrast with Dr. Everson's findings, the record shows that plaintiff's condition improved after he began Rebif therapy in June of 2011, and that most of his symptoms resolved by May, 2012. Tr. 323, 358. Evidence in the record also indicated that Dr. Everson rendered her opinion at a time when plaintiff performed part-time work and other daily activities that indicate he was not as limited as Dr. Everson alleged. Tr. 23, 38-40. Further, the ALJ noted that Dr. Everson was plaintiff's primary care provider, not a specialist, and had been plaintiff's provider for only three months when she rendered her opinion. Tr. 23. On this record, the ALJ provided legally sufficient reason to assign less weight to Dr. Everson's opinion. *Valentine*, 574 F.3d at 692-93.

## B. Dr. Russell

Dr. Russell examined plaintiff once and completed a medical report on June 6, 2012. Tr. 337-42. He opined that plaintiff could stand and walk for up to six hours and had no limitations in his ability to sit. Tr. 340-42. He recommended that plaintiff never work from heights, around heavy machinery, or at hot temperatures. Tr. 342. Dr. Russell opined that plaintiff should never climb or balance; he could occasionally lift 50 pounds and frequently lift 25 pounds; he could frequently stoop, kneel, crouch, crawl, reach, and feel; and occasionally perform handling and fingering. Tr. 341. Dr. Russell stated that plaintiff's movements were "dys-coordinated" due to a "presumably a flare of his multiple sclerosis." Tr. 342. Dr. Russell also noted that plaintiff would likely have a "staggering, but progressively declining course," which would likely cause a worsened functional status in the future. *Id.* He also stated that "[a]t this time, [plaintiff] is relatively functional." *Id.*

Plaintiff argues that the ALJ erred by not adopting all of Dr. Russell's findings, notably his opinion that plaintiff had manipulative limitations that limited him to occasional handling and fingering. The ALJ gave only "some weight" to Dr. Russell's consultative opinion that plaintiff is capable of performing a range of medium exertional tasks. Tr. 22. As an initial matter, Dr. Russell's opinion was inconsistent with the opinion of State agency physician Lewis J. Barton, M.D., who opined that plaintiff had no manipulative limitations. Tr. 65. The ALJ was thus required to provide specific, legitimate reasons for rejecting Dr. Russell's controverted opinion.

The ALJ stated that the record did not support "more restrictive manipulative limitations" like those identified by Dr. Russell. Tr. 22. For example, while plaintiff only complained of symptoms in his left hand, Dr. Russell limited plaintiff's handling and fingering bilaterally. Further, State agency physician May Ann Iyer, M.D., noted that plaintiff was able to grasp and manipulate both large and small objects with both hands, which was inconsistent with the severe manipulative limitations imposed by Dr. Russell. Tr. 77, 340. On this record, Dr. Russell's opinion was inconsistent with the record evidence as well as his own examination findings. Accordingly, the court finds that the ALJ provided legally sufficient reason for assigning only some weight to Dr. Russell's opinion and rejecting his assessment of plaintiff's manipulative limitations.

## II.    Step Two Findings

Plaintiff first argues that the ALJ erred because he failed to find his depression and anxiety severe at step two of the sequential analysis. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.*

"Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, at *7 (D. Or. July 1, 2011), citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ resolved step two in plaintiff's favor, concluding that plaintiff suffered from the severe impairment of MS and the non-severe impairments of depression, anxiety, mathematics disorder, and asthma. Tr. 18-19. The ALJ found plaintiff's mental health impairments "do not cause more than a minimal limitation in his ability to perform basic mental work activities." Tr. 19.

The ALJ based his step two findings in part on State agency psychological assessments completed by Robert Brill, Ph.D., and Sandra L. Lundblad, Psy.D. Drs. Brill and Lundblad corroborated plaintiff's lack of mental health treatment beyond relatively low-dose medication management. Plaintiff was diagnosed with severe/recurrent depression that worsened following his MS diagnosis. Tr. 234, 325. He was prescribed Prozac, and his dosage doubled in July, 2011. Tr. 327.

Plaintiff argues that the ALJ's step two findings constitute error because the ALJ omitted his mental health-related limitations from the RFC. While the ALJ found mild limitation in concentration, persistence and pace at step two, however, this was "not an RFC assessment but … used to rate the severity of [plaintiff's] mental impairment(s) at steps 2 and 3." *Israel v. Astrue,* 494 Fed.Appx. 794, 796 (9th Cir. Oct. 12, 2012) (quoting SSR 96-8p, 1996 WL 374184). The ALJ was not required to incorporate mild mental limitations into the RFC. Tr. 19, 20. On this record, plaintiff has failed to show that the ALJ committed harmful error at step two.

## III.    Plaintiff's Testimony

Plaintiff next argues the ALJ erred in rejecting his testimony regarding the extent and severity of his symptoms. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.*, quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson*, 359 F.3d at 1197.

At the administrative hearing, plaintiff testified that he cannot work primarily because of fatigue caused by MS. Tr. 45. Plaintiff stated that he is "worn out" and "really fatigued after 4-6 hours" and therefore cannot work a regular 8-hour day. Tr. 46-47, 51. He prefers to take a nap every day for one to two hours. Tr. 50. Plaintiff also testified he experiences lack of balance, shakiness, and tremors. Tr. 45-46.

In evaluating plaintiff's testimony, the ALJ first found that plaintiff's testimony was belied by his daily activities. Tr. 28. Daily activities that are inconsistent with a claimant's allegations are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even where a claimant's daily activities "suggest some difficulty functioning, they

may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, plaintiff retained the ability to attend to his own personal care, prepare simple meals, and perform household chores such as doing laundry and mowing his mother's yard. Tr. 192, 195. Plaintiff was able to use public transportation, attend church, go shopping, go to the library, and go to the "employment service" on a regular basis. Tr. 40, 193-94. He maintained hobbies including swimming, and climbed Multnomah Falls twice since moving to Oregon in October, 2011. Tr. 19, 34, 358. Plaintiff was also able to retain part-time work as a food demonstrator. This evidence, however, is consistent with plaintiff's testimony regarding his limitations and provides no weight to the ALJ's conclusion that plaintiff was not as impaired as he alleged.

The ALJ also found plaintiff's testimony was not corroborated by the medical evidence. Tr. 28. The objective medical evidence, or lack thereof, is an important factor to consider in determining a claimant's credibility. *See* 20 C.F.R. 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work). Here, while plaintiff alleged that he had difficulty moving around, lifting heavy items, and working in the heat (Tr. 21, 191, 195-96), a physical examination revealed unremarkable findings: normal strength, muscle tone, and bulk in his extremities; intact cranial nerves; intact sensation to light touch, temperature and vibration; normal coordination; normal gait; and ability to walk in tandem and on heels and toes. Tr. 21, 315, 326, 328-29. Other physical exams revealed normal reflexes and muscle tone, bulk, and strength. Tr. 328. When plaintiff started Rebif therapy, he acknowledged that he did not experience any subsequent flares in his

Page 11 – FINDINGS AND RECOMMENDATION

symptoms. Tr. 21, 44-45. Lack of corroborating medical evidence, however, is not by itself a clear and convincing reason to reject a claimant's credibility when the claimant, as plaintiff did in this case, provides objective medical evidence of the underlying impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991); *see also Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (the claimant need only show that her impairment could reasonably have caused some degree of the symptoms alleged). Because plaintiff presented objective medical evidence of his MS, he created a reasonable inference to support his allegations of fatigue and other symptoms. *See Fair*, 885 F.2d at 601 (noting the subjective nature of symptoms such as pain). On this record, the ALJ's reasons for rejecting plaintiff's testimony are not clear and convincing.

## IV.    Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be

Page 12 – FINDINGS AND RECOMMENDATION

required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony. When the erroneously rejected evidence is credited as true, no outstanding issues remain before a disability determination can be made. The VE testified that a person with the fatigue-related limitations described in plaintiff's testimony could not sustain substantial gainful employment, because he would not be able to meet an employer's expectation of attendance. Tr. 55. On this record, it is clear that the ALJ would be required to find plaintiff disabled and therefore remand for immediate payment of benefits is appropriate.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for the immediate payment of benefits.

It is so ORDERD and DATED this _____//_____ day of July, 2016.

OWEN M. PANNER
United States Senior District Judge